**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**FRANKLIN L. SIBLEY**                                                      **PLAINTIFF**

**v.**                                **CIVIL ACTION NO. 3:20-CV-00282-GHD-JMV**

**CITIZENS BANK & TRUST COMPANY
OF MARKS, QUITMAN COUNTY, MISSISSIPPI
And PEYTON MB SELF III**                              **DEFENDANTS**

## OPINION GRANTING IN PART AND DENYING IN PART
## DEFENDANT CITZENS BANK'S MOTION TO DISMISS

Presently before the Court is the Joint Motion to Dismiss and Motion to Strike Jury Demand filed by Defendant Citizens Bank & Trust Company of Marks, Quitman County, Mississippi (hereinafter "Citizens Bank"), citing Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure [10], in response to the Plaintiff's Complaint alleging breach of contract and breach of duties under state law and the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") [1]. Upon due consideration, for the reasons set forth herein, the Court hereby grants in part and denies in part the Defendant's Motion.

**I. Factual Background and Procedural History**

Plaintiff Franklin L. Sibley is a former employee of Defendant Citizens Bank [*Id.* at ¶ 1], which is a state-chartered commercial bank located in Marks, Mississippi [*Id.* at ¶ 2]. Defendant Peyton MB Self III is the controlling shareholder of Defendant Citizens Bank, and is the chairman and CEO of Defendant Citizens Bank's Board of Directors [*Id.* at ¶ 3]. He resides in Oxford, Mississippi [*Id.*]. The Plaintiff was hired by Defendant Citizens Bank in 1984 for the position of president and CEO [*Id.* at ¶ 5]. He eventually assumed the positions of officer and

director of Defendant Citizens Bank's Board of Directors and its holding company [*Id.*]. On December 22, 2000, the Plaintiff and Defendant Citizens Bank entered into a Supplemental Executive Retirement Plan Agreement (hereinafter the "SERP Agreement") in which Defendant Citizens Bank agreed to pay "salary continuation benefits" to the Plaintiff upon his retirement, disability, or death as a "reward for past performance and to encourage [the Plaintiff] to remain an employee of the Bank" [*Id.* at ¶ 6]. The Plaintiff's benefits under the SERP Agreement were to commence upon the Plaintiff's "termination of employment," which would occur when the Plaintiff ceased to be an employee of Defendant Citizens Bank "for any reason" other than a leave of absence or a for-cause termination, a term that includes "gross neglect of duties" [*Id.*]. Notably, the SERP Agreement only concerned the Plaintiff's employment "as a Bank employee" and did not address his status regarding Defendant Citizens Bank's holding company [*Id.*]. The SERP Agreement was amended on April 12, 2005, when the Plaintiff was 57 years old [*Id.* at ¶ 9]. The amendment increased the retirement benefit amount, deleted the "termination of employment" provision in the Agreement, and instead included a "separation of service" provision [*Id.*]. Although the SERP Agreement originally gave Defendant the "sole and absolute right to decide" disputes concerning the Plaintiff's employment status and the date of his termination of employment, this language was removed in the 2005 amendment [*Id.*]. The SERP Agreement was amended once again on October 21, 2008, so as to redefine and expand the "separation of service" provision [*Id.* at ¶ 10]. This provision now included the point in time at which the Plaintiff's "service as a Bank employee would permanently decrease to no more than 20% of the average bona fide services performed during the prior 36-month period" [*Id.*]. On March 12, 2012, after the Plaintiff was already 64 years old, the SERP Agreement was amended yet again [*Id.* at ¶ 11]. This amendment, which was intended to induce the Plaintiff to defer

retirement, increased the planned retirement benefit in the event that he continued to work at the Bank and delayed the time when he was required to begin drawing retirement benefits [*Id.*]. In February 2015, when the Plaintiff was 67 years old, he entered into an agreement with Defendant Citizens Bank's Board of Directors [*Id.* at ¶ 12]. This agreement reduced the Plaintiff's employment at the bank to 3 days a week until he reached the age of 70 years old [*Id.*]. In a March 10, 2015, Resolution, Defendant Citizens Bank's Board of Directors acknowledged this plan for the Plaintiff's shift to a 3-day-per-week schedule, and stated that the day-to-day operations of the Bank would be passed on to the management team already in place [*Id.*]. On October 20, 2015, Defendant Citizens Bank's Compensation Committee acknowledge this plan for the Plaintiff to shift to a "part-time" employment status [*Id.* at ¶ 13].

In keeping with this plan, the Plaintiff resigned as President and CEO of Defendant Citizens Bank in February 2016 [*Id.* at ¶ 14]. At Defendant Self's request, the Plaintiff remained the president and CEO of Defendant Citizens Bank's holding company, CBT Bancshares, Inc. [*Id.*]. It was also at this time that the parties agreed that the Plaintiff would further reduce his time at the Bank to 1 day a week when he reached the age of 70 years old, an event that occurred in February 2018 [*Id.* at ¶¶ 14-15]. At that time, the Plaintiff's level of "bona fide services" as a "Bank employee," i.e. excluding his work as an officer and director of Defendant Citizens Bank's holding company, had been reduced to a figure below 20% of the services he had performed for the 36-month time period prior to this date [*Id.* at ¶ 15]. Therefore, according to the Plaintiff, under the terms of the amended SERP Agreement, the Plaintiff had at that point "separated from service" and was entitled to salary continuation benefits starting in March 2018 [*Id.* at ¶ 15].

On April 1, 2019, the Plaintiff, having reached the age of 71 in February of that year, gave notice of his intention to retire from his position as the Director of the Board of Directors of Defendant Citizens Bank's holding company, and to move to "full retirement" [*Id.* at ¶ 16]. The Board of Directors for Defendant Citizens Bank's holding company met on that same day, and "accepted the retirement of Frank Sibley as of 4/01/2019 from the bank holding company" [*Id.*, at ¶ 16; 1-7]. The Plaintiff likewise resigned from his positions as vice chairman and member of Defendant Citizens Bank's Board of Directors at this time [*Id.*]. In July 2019, the Plaintiff gave notice of his resignation as President and CEO of the holding company [1 at ¶ 17]. The minutes of a meeting of the holding company's Board of Directors that was held on July 2, 2019, acknowledged that the Plaintiff would "be resigning as President and CEO of the holding company during the month of July" and stated that the holding company's Board of Directors, which included Defendant Self, had "accepted his resignation and wished him well with his retirement" [1-8]. The holding company's Board of Directors "agreed to retain [the Plaintiff's] services as a consultant as needed through the end of the year" [*Id.*]. Similarly, during a July 16, 2019, meeting of Defendant Citizens Bank's Board of Directors, Defendant Self told the Board that the Plaintiff had "retired effective yesterday 7/15/19" and would work as a "consultant on troubled asset negotiations and workouts on an as-needed basis" [1 at ¶ 18]. A company-wide email sent on July 24, 2019, from the Bank's management to its employees announced the news of the Plaintiff's retirement [*Id.* at ¶ 19; 1-10]. On August 12, 2019, Defendant Citizens Bank reported the Plaintiff's retirement to the Mississippi Department of Banking and the Federal Deposit Insurance Corporation (FDIC) [1 at ¶ 20; 1-11]. Additionally, on March 20, 2020, Defendant Citizens Bank submitted an application to renew its liability insurance and directors & officers bond coverage in which it asserted that there had been no involuntary terminations of

employees in the previous year [1 at ¶ 20; 1-14].  Through December 2019, the Plaintiff consulted with Defendant Citizens Bank on a weekly basis, and maintained an office at the Marks branch location for much of this time [1 at ¶ 21].

The Plaintiff alleges that during the second half of 2019, Defendant Citizens Bank suffered significant financial losses due to a customer's fraudulent loan activity and required an immediate capital infusion to offset these losses [*Id.*].  He further alleges that, in an effort to acquire additional capital, Defendant Citizens Bank "devised a false and fraudulent plan to terminate [the Plaintiff's] SERP Agreement, stop all future retirement benefits, and cash in the BOLI policy in December 2019 — two years after [the Plaintiff's] separation from service and six months after his 'full' retirement was accepted and reported by the Bank's and Holding Company's Boards of Directors" [*Id.*; 1-15 at ¶ 3].  The Plaintiff had no knowledge of these events, and only learnt through a January 20, 2020, letter that Defendant Citizens Bank's Board of Directors was immediately terminating the SERP Agreement and all further benefit payments because the Plaintiff had allegedly not voluntarily retired in July 2019 but rather was verbally terminated for cause [1 at ¶ 22; 1-16].  The letter, which was sent by Defendant Self, stated that "[i]n a conversation between [the Plaintiff] and [Defendant] Peyton Self on July 12, 2019, Mr. Self terminated [the Plaintiff's] employment for reasons which constitute gross neglect of duties.  Accordingly, [the Plaintiff's] benefits under the Agreement are being terminated" [1-16].  The letter did not provide any further details, facts, or evidence related to this alleged termination.  The Plaintiff also alleges that, at the time of his receipt of the letter, both Defendants—along with other members of Defendant Citizens Bank's management team—knew that the Plaintiff had been receiving retirement benefits under the SERP Agreement on a monthly basis from March 2018 to January 2020 [1 at ¶ 22].  Only one day after Defendant Self sent the letter to the

Plaintiff, Defendant Citizens Bank's Board of Directors sent a Consent Order Status Report to the FDIC in which it asserted that "the Bank's capital ratios remain above the minimums required by the Order" and that termination of the Plaintiff's SERP Agreement "provided another $1,049,633 of capital to the Bank in January 2020," which is to say, approximately 24 hours prior to the transmission of this status report to the FDIC [*Id.* at ¶ 23; 1-15].

In response to this termination letter, the Plaintiff requested access to Defendant Citizens Bank's records regarding the basis of this alleged termination for cause [1 at ¶ 24]. According to the Plaintiff, Defendant Citizens Bank "begrudgingly and incompletely" replied to his request for documents, and failed to provide any documents on which it relied when terminating the Plaintiff's benefits [*Id.*]. Instead, according to the Plaintiff, Defendant Citizens Bank only allowed him to request documents that he believed to be relevant without providing the documents that it relied upon when terminating the Plaintiff's retirement benefits [*Id.*]. Following a series of requests for documents, the Plaintiff submitted his Petition for Review of Retirement Benefit Termination on March 13, 2020 [*Id.* at ¶ 25; 1-17]. In his Petition, the Plaintiff noted that Defendant Citizens Bank's "own contemporaneous records… establishes, [sic] beyond peradventure, that [the Plaintiff] was not terminated for cause… but rather he voluntarily retired after agreeing to several deferments as a matter of accommodation to the Bank's management needs" [*Id.* at 4-5]. The Petition further stated that "there is no written documentation reflecting a 'cause' determination ([the Plaintiff has] asked for such documentation) which would contradict the written documentation reflecting [the Plaintiff's] voluntary retirement" [*Id.* at 5]. In response to the Plaintiff's Petition, Defendant Citizens Bank provided the Plaintiff with an Affidavit from Defendant Self and his secretary, Nelle Pritchard [1 at ¶ 26; 1-18]. In said Affidavit, Defendant Self alleges that the Plaintiff's role as the President

of the Mississippi Bankers Association distracted him from his work at the Bank [*Id.* at ¶ 4]. Defendant Self also alleged that the Bank made "several problem loans" and that "[m]ost, if not all, of those loans were handled by Taylor Sibley, [the Plaintiff's] son whom [he] had trained and whom [he] was supposed to be supervising" [*Id.*]. Defendant Self alleged in his Affidavit that these "problem loans" constituted "gross neglect of [the Plaintiff's duties" and "led to the Bank being forced to enter into a Consent Order with regulators on July 9, 2019" [*Id.*, at ¶ 7]. He further alleges that a conversation occurred between the Plaintiff and Defendant Self in July 2019 in which the Plaintiff said that he, the Plaintiff, "felt like a failure" [*Id.* at ¶ 8]. Defendant Self alleges that he fired the Plaintiff during this conversation [*Id.*]. He further explained in the Affidavit that at the time of the alleged conversation firing Sibley, Defendant Self did not know that the SERP Agreement allowed the Bank to terminate the Plaintiff's retirement benefits if he was terminated for cause, and that as a result of this alleged lack of knowledge, "a desire to move [the Plaintiff's] retirement obligation back into the Bank's capital was not and could not have been motivation for [the Plaintiff's] termination" [*Id.* at ¶ 10]. Defendant Self alleges that Defendant Citizens Bank decided to refer to this termination as a retirement so as not to cause the Plaintiff any embarrassment [*Id.* at ¶ 11]. In support of his contention, Defendant Self cited to the minutes of a January 23, 2020, board meeting by Defendant Citizens Bank's Board of Directors at which the Board "acknowledge[d]" that the Plaintiff had been terminated for gross neglect of duties" [*Id.* at ¶ 11, and p. 19]. The Plaintiff had denied that this alleged conversation between himself and Defendant Self ever occurred, and flatly contends that Defendant Self's statement alleging that the Plaintiff was fired in July 2019 is false [1 at ¶ 26].

On May 7, 2020, the Plaintiff served Defendant Citizens Bank with his Reply in Support of Petition for Review of Retirement Benefits Termination [*Id.*; 1-19]. His Reply contained

affidavits from the Plaintiff; his wife Kay Sibley; Sandy Haynes, a consultant for Defendant Citizens Bank; and Bennett Hill, Ms. Haynes' business partner [1-19]. The Plaintiff argues that these affidavits establish "that (1) Sibley voluntarily and 'fully' retired in July 2019, (2) Sibley continued to consult with Bank officers and employees and meet with Bank customers from July thru [sic] December 2019, (3) Peyton Self and other Bank officials were aware of Sibley's post-retirement Bank activities, and (4) Sibley properly drew retirement benefits starting in March 2018" [1 at ¶ 27]. Defendant Citizens Bank responded to the Plaintiff's Reply by submitting a supplemental affidavit from Defendant Self and an affidavit from Jeff Fair, the president of a bank consulting firm that was engaged by Defendant Citizens Bank [1 at ¶ 28; 1-20]. The Plaintiff claims that Self's supplemental affidavit falsely blamed the Plaintiff for a failed merger negotiation that had concluded in early 2017, and that Fair's affidavit mischaracterized an email exchange between the Plaintiff and Fair in an effort to provide false evidence of the Plaintiff's alleged involuntary termination [1 at ¶ 28].

On May 27, 2020, the Plaintiff submitted his Supplement to Reply in Support of Petition for Review of Retirement Benefits Termination; this included the Plaintiff's supplemental affidavit and supporting documents that allegedly refute the contentions made in the affidavits from Fair and Defendant Self [*Id.* at ¶ 29; 1-21]. In response to this Supplement, Defendant Citizens Bank allowed the Plaintiff to search its files [1 at ¶ 30]. Defendant Citizens Bank provided the Plaintiff with additional documentation, which was received on June 26, 2020 [*Id.*]. Following the receipt of these documents, the Plaintiff submitted a Second Supplemental Response to Defendant Citizens Bank on July 17, 2020 [*Id.*; 1-22; 1-23; 1-24; 1-25]. This Second Supplemental Response also included a Second Supplemental Affidavit from the Plaintiff [1 at ¶ 30; 1-22]. The Plaintiff alleges that these documents support his contentions in

this case [1 at ¶ 30]. In response to this supplemental material, Defendant Citizens Bank submitted a Second Supplemental Affidavit from Defendant Self [*Id.*; 1-26]. Defendant Citizens Bank's Board of Directors issued their Notice of Decision on July 24, 2020; this Notice denied the Plaintiff's appeal [1 at ¶ 31; 1-27].

As a result of this denial of review and consequent denial of the Plaintiff's retirement benefits, the Plaintiff filed his Complaint on October 23, 2020, in which he alleged that the Defendants are liable for breach of contract, tortious breach of contract, and intentional interference with contractual relations, along with violations of ERISA §§ 502(a), 503, and 510 [*Id.* at ¶¶ 38-49]. Through his Complaint, the Plaintiff seeks a declaratory judgment finding that the Defendants breached the terms of the SERP Agreement and violated ERISA § 502(a); a declaratory judgment finding that the Plaintiff is entitled to the retirement benefits documented in the SERP Agreement; a judgment awarding him a lump sum totaling the sum of all past-due retirement benefits allotted to him under the SERP Agreement; a judgment awarding him interest, costs, attorney's fees, penalties, compensatory damages, and punitive damages; and any other relief that the court may grant in law or equity [*Id.* at ¶ 51]. He also demanded a jury trial [*Id.* at 1].

In response to the Plaintiff's Complaint, Defendant Citizens Bank filed a Joint Motion to Dismiss and Motion to Strike Jury Demand [10]. In said Motion, it argued that the state law causes of action—breach of contract, tortious breach of contract, and interference with contractual relations—are preempted by ERISA, and that therefore the Plaintiff has failed to state a claim upon which relief can be granted [*Id.* at ¶ 3]. Defendant Citizens Bank also argued in the alternative that the intentional interference with contractual relations cause of action should be dismissed because it is a party to the contract [*Id.* at ¶ 4]. It further argued that the Plaintiff had

failed to plead a proper cause of action under ERISA § 510 and that he had failed to state a claim upon which relief might be granted [*Id.* at ¶ 5]. The Plaintiff also argued that the Plaintiff's request for penalties, compensatory damages, and punitive damages should be dismissed because extra-contractual damages are not an available remedy under ERISA [*Id.* at ¶ 6]. He also cited Rule 12(f) of the Federal Rules of Civil Procedure to argue that the Court should strike the Plaintiff's jury demand as ERISA does not provide for a trial by jury [*Id.* at ¶ 7].

On December 20, 2020, the Plaintiff filed his Response to Defendant Citizens Bank's Motion to Dismiss and Motion to Strike Jury Demand [18]. In his Response, the Plaintiff conceded that ERISA preempts all of his state law claims against Defendant Citizens Bank, and should be dismissed without prejudice [*Id.* at ¶ 1]. He also conceded the fact that his jury demand should be striken as inapplicable for claims arising under ERISA [*Id.*]. However, he reiterated his claims under ERISA §§ 502(a), 503, and 510 [*Id.*], and requested that the Court deny Defendant Citizens Bank's request to dismiss the ERISA § 510 claim [*Id.* at ¶ 3].

On December 30, 2020, Defendant Citizens Bank filed its Rebuttal Memorandum in Support of its Joint Motion to Dismiss and Motion to Strike Jury Demand [27]. In this Rebuttal, Defendant Citizens Bank noted the Plaintiff's concessions, and addressed the remaining causes of action: ERISA §§ 502(a), 503, and 510 [*Id.* at 1-2]. It further noted that it did not seek dismissal of the Plaintiff's claims under §§ 502(a) and 503, and that the only unresolved claim sub judice in its Motion was the claim under § 510 [*Id.*]. As to this cause of action, Defendant Citizens Bank reiterated its arguments that the Plaintiff failed to plead a viable cause of action under the statute, because the Plaintiff claimed to have retired, rather than be terminated [*Id.* at 2-5]. Under Defendant Citizens Bank's theory of the case, "if an employer 'characterized an employee's termination as one "for cause"'" in order to deny the employee benefits, Section 510

would be implicated," but this would not be the case when the parties disagree as to whether a termination actually occurred [*Id.* at 3].

The matter is now ready for review.

## II. Legal Standards

### A. Rule 12(b)(6)

When considering a Rule 12(b)(6) claim, the Court is limited by the allegations in the complaint itself, along with any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). The complaint must contain facts that, if accepted as true, would support a claim for relief that is facially plausible. *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is facially plausible when the facts underlying the claim allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). Dismissal is warranted when a plaintiff fails to present sufficient facts to support the elements of the causes of actions articulated in the Complaint, and has thereby failed to advance their complaint beyond mere speculation. *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (citing *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

### B. ERISA § 510

Section 510 of the Employee Retirement Income Security Act of 1974 (ERISA) reads as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140.

"To sustain a valid § 510 claim, an employee must show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Bodine v. Employers Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003) (citing *Van Zant v. Todd Shipyards Corp.*, 847 F.Supp. 69, 72 (S.D.Tex.1994)). Although a § 510 claim "may be maintained against non-employers," the Fifth Circuit has not "reached a conclusion on these legal issues concerning the reach of Section 510 liability." *Sherrod v. United Way Worldwide*, 821 Fed.Appx. 311, 315-16 (5th Cir. 2020) (quoting *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 871 (5th Cir. 2018)). The Seventh Circuit has likewise noted that "[b]y its terms, § 510 does not constrain liability on the existence of an employment relationship. It restrains 'any person,' not just employers." *Teamsters Local Union No. 705 v. Burlington Northern Santa Fe, LLC*, 741 F.3d 819, 827 (7th Cir.). The Fourth Circuit has stated

that § 510, along with this companion statutes in ERISA, "protect 'rights about to be earned but frustrated due to unlawful employer action, benefits earned but not paid, other rights due a participant but not fulfilled, and future benefits earned but not yet due.'" *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993). Other district courts have allowed § 510 claims against company executives and high-ranking individuals. See, e.g., *Swanson v. U.A. Local 13 Pension Plan*, 779 F.Supp. 690, 702 (W.D.N.Y. 1991) (finding that "that individuals may be named as defendants in a [§ 510] claim, but only if their alleged activity has directly and fundamentally altered the plan participant's employment relationship so as to interfere with his pension rights") and *Simons v. Midwest Telephone Sales and Service, Inc.*, 433 F.Supp.2d 1007, 1012-13 (D. Minn. 2006) (holding that "the person who directly fired [the plaintiff]" could be held liable under § 510).

### III. Analysis

As noted above, the Plaintiff has conceded a number of his claims against Defendant Self, leaving only his § 510 claim at odds in the case *sub judice*. The Court finds that the Plaintiff has articulated a valid cause of action under this statute. The Plaintiff alleges that he retired from his position with his employer, and began receiving his retirement benefits. Approximately six months after his full retirement, Defendant Self, acting through and on behalf of Defendant Citizens Bank, retroactively and fraudulently defined this retirement as termination for cause—thereby withholding the Plaintiff's retirement benefits due to him under the terms of the SERP Agreement—in an effort to generate capital for Defendant Citizens Bank at a time when it was desperate for funds needed to avoid regulatory repercussions. Accepting these facts as true, as the Court is bound to do, it finds that the Plaintiff has satisfied the elements required for sustaining a valid § 510. See *Bodine*, 352 F.3d at 250. The fraudulent characterization of a

retirement as a for-cause termination and withholding of retirement benefits equate to prohibited employer action taken for the purpose of interfering with the attainment of the Plaintiff's rights under the SERP Agreement. *Id.* As to the language of § 510 itself, the actions described by the Plaintiff could be characterized at minimum as either a discharge—although fraudulently pursued—or a disciplinary measure—through pretextual reasoning—against the Plaintiff for exercising his rights under his retirement benefits plan. Given the broad scope of the statute, this is sufficient to clear the bar presented by a motion to dismiss.

## IV. Conclusion

For the reasons stated above, Defendant Citizens Bank's Motion to Dismiss [10] is GRANTED in part and DENIED in part. The Plaintiff's state-law claims of breach of contract, tortious breach of contract, and interference with contractual relations are dismissed due to preemption by ERISA, as conceded by the Plaintiff. Defendant Citizens Bank has not sought the dismissal of the Plaintiff's claims under ERISA §§ 502(a) and 503. This leaves the Plaintiff's § 510 allegation as the only valid claim under contention in this Motion, which shall be allowed to proceed accordingly, along with the Plaintiff's other ERISA claims as to Defendant Citizens Bank.

An order in accordance with this opinion will issue on this day.

THIS, the 18th of January, 2022.

_____
SENIOR U.S. DISTRICT JUDGE