IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**FRANKLIN L. SIBLEY**  PLAINTIFF

V.  NO: 3:20CV282-GHD-JMV

**CITIZENS BANK & TRUST COMPANY**  DEFENDANTS
**OF MARKS, QUITMAN COUNTY,**
**MISSISSIPPI, AND PEYTON MB SELF**
**III**

### MEMORANDUM OPINION

Presently before the Court are three motions for summary judgment: Defendant Peyton Self's Motion for Summary Judgment [97], Defendant Citizens Bank and Trust Company's ("Citizens Bank") Motion for Summary Judgment [99], and Plaintiff Franklin Sibley's Motion for Summary Judgment [101]. Upon due consideration, for the reasons set forth herein, the Court hereby denies Defendant Self's Motion for Summary Judgment [97], grants in part and denies in part Defendant Citizens Bank's Motion for Summary Judgment [99], and denies Plaintiff Sibley's Motion for Summary Judgment [101].

### Factual and Procedural Background

Plaintiff Franklin L. Sibley is a former employee of Defendant Citizens Bank of Marks, Quitman County, Mississippi. Defendant Self is the controlling shareholder of Defendant Citizens Bank and is the chairman and CEO of Defendant Citizens Bank's Board of Directors. Sibley was hired by Defendant Citizens Bank in 1984 for the position of president and CEO. He eventually assumed the positions of officer and director of Defendant Citizens Bank's Board of Directors and its holding company, CBT Bankshares.

1

On December 22, 2000, the Sibley and Citizens Bank entered into a Supplemental Executive Retirement Plan Agreement ("SERP Agreement") in which Defendant Citizens Bank agreed to pay "salary continuation benefits" to the Plaintiff upon his retirement, disability, or death as a "reward for past performance and to encourage [the Plaintiff] to remain an employee of the Bank." The Plaintiff's benefits under the SERP Agreement were to commence upon the Plaintiff's "termination of employment," which would occur when the Plaintiff ceased to be an employee of Defendant Citizens Bank "for any reason" other than a leave of absence or a for-cause termination, a term that includes "gross neglect of duties." Notably, the SERP Agreement only concerned the Plaintiff's employment "as a Bank employee" and did not address his status regarding Defendant Citizens Bank's holding company.

The SERP Agreement was amended on April 12, 2005, when the Plaintiff was 57 years old. The amendment increased the retirement benefit amount, deleted the "termination of employment" provision in the Agreement, and instead included a "separation of service" provision. Although the SERP Agreement originally gave Defendant the "sole and absolute right to decide" disputes concerning the Plaintiff's employment status and the date of his termination of employment, this language was removed in the 2005 amendment. The SERP Agreement was amended once again on October 21, 2008, which redefined and expanded the "separation of service" provision. This provision now included the point in time at which the Plaintiff's "service as a Bank employee would permanently decrease to no more than 20% of the average bona fide services performed during the prior 36-month period." On March 12, 2012, when Plaintiff was 64 years old, the SERP Agreement was amended yet again. This amendment intended to induce the Plaintiff to defer retirement by increasing the planned retirement benefit if

2

he continued to work at the Bank and delayed the time when he was required to begin drawing retirement benefits.

In February 2015, when the Plaintiff was sixty-seven years old, he entered into an agreement with Defendant Citizens Bank's Board of Directors which reduced the Plaintiff's employment at the bank to three days a week until he reached the age of seventy years old. In a March 10, 2015, Resolution, Defendant Citizens Bank's Board of Directors acknowledged this plan for the Plaintiff's shift to a three-day-per-week schedule and stated that the day-to-day operations of the Bank would be passed on to the management team already in place. On October 20, 2015, Defendant Citizens Bank's Compensation Committee acknowledged this plan for the Plaintiff to shift to a "part-time" employment status.

In keeping with this plan, the Plaintiff resigned as President and CEO of Defendant Citizens Bank in February 2016. At Defendant Self's request, the Plaintiff remained the president and CEO of Defendant Citizens Bank's holding company, CBT Bancshares, Inc. It was also at this time that the parties agreed that the Plaintiff would further reduce his time at the Bank to 1 day a week when he reached the age of 70 years old, an event that occurred in February 2018. At that time, the Plaintiff's level of "bona fide services" as a "Bank employee," i.e. excluding his work as an officer and director of Defendant Citizens Bank's holding company, had been reduced to a figure below 20% of the services he had performed for the 36-month time period prior to this date. Therefore, according to the Plaintiff, under the terms of the amended SERP Agreement, the Plaintiff had at that point "separated from service" and was entitled to salary continuation benefits starting in March 2018.

On April 1, 2019, the Plaintiff, now seventy-one years old, gave notice of his intention to retire from his position as the Director of the Board of Directors of Defendant Citizens Bank's

3

holding company, and to move to "full retirement." The Board of Directors for Defendant Citizens Bank's holding company met on that same day and "accepted the retirement of Frank Sibley as of 4/01/2019 from the bank holding company." The Plaintiff likewise resigned from his positions as vice chairman and member of Defendant Citizens Bank's Board of Directors at this time. In July 2019, the Plaintiff gave notice of his resignation as President and CEO of the holding company. The minutes for a July 2, 2019, board meeting of the holding company's Board of Directors acknowledged that the Plaintiff would "be resigning as President and CEO of the holding company during the month of July" and stated that the holding company's Board of Directors, which included Defendant Self, had "accepted his resignation and wished him well with his retirement." The holding company's Board of Directors "agreed to retain [the Plaintiff's] services as a consultant as needed through the end of the year." Similarly, during a July 16, 2019, meeting of Defendant Citizens Bank's Board of Directors, Defendant Self told the Board that the Plaintiff had "retired effective yesterday 7/15/19" and would work as a "consultant on troubled asset negotiations and workouts on an as-needed basis." A company-wide email sent on July 24, 2019, from the Bank's management to its employees announced the news of the Plaintiff's retirement.

On August 12, 2019, Defendant Citizens Bank reported the Plaintiff's retirement to the Mississippi Department of Banking and the Federal Deposit Insurance Corporation (FDIC). Additionally, on March 20, 2020, Defendant Citizens Bank applied to renew its liability insurance and directors & officers bond coverage in which it asserted that there had been no involuntary terminations of employees in the previous year. Through December 2019, the Plaintiff consulted with Defendant Citizens Bank on a weekly basis and maintained an office at the Marks branch location for much of this time.

The Plaintiff alleges that during the second half of 2019, Defendant Citizens Bank suffered significant financial losses due to a customer's fraudulent loan activity and required an immediate capital infusion to offset these losses. The Plaintiff further alleges that, in an effort to acquire additional capital, Defendant Citizens Bank "devised a false and fraudulent plan to terminate [the Plaintiff's] SERP Agreement, stop all future retirement benefits, and cash in the BOLI policy in December 2019 — two years after [the Plaintiff's] separation from service and six months after his 'full' retirement was accepted and reported by the Bank's and Holding Company's Boards of Directors." The Plaintiff alleges that he had no knowledge of these events, and was only informed through a January 20, 2020, letter that Defendant Citizens Bank's Board of Directors was immediately terminating the SERP Agreement and all further benefit payments because the Plaintiff had allegedly not voluntarily retired in July 2019 but rather was verbally terminated for cause. The letter, which was sent by Defendant Self, stated that "[i]n a conversation between [the Plaintiff] and [Defendant] Peyton Self on July 12, 2019, Mr. Self terminated [the Plaintiff's] employment for reasons which constitute gross neglect of duties. Accordingly, [the Plaintiff's] benefits under the Agreement are being terminated." The letter did not provide any further details, facts, or evidence related to this alleged termination.

The Plaintiff also alleges that, at the time of his receipt of the letter, both Defendants— along with other members of Defendant Citizens Bank's management team—knew that the Plaintiff had been receiving retirement benefits under the SERP Agreement on a monthly basis from March 2018 to January 2020. Only one day after Defendant Self sent the letter to the Plaintiff, Defendant Citizens Bank's Board of Directors sent a Consent Order Status Report to the FDIC in which it asserted that "the Bank's capital ratios remain above the minimums required by the Order" and that termination of the Plaintiff's SERP Agreement "provided

another $1,049,633 of capital to the Bank in January 2020," which is to say, approximately 24 hours prior to the transmission of this status report to the FDIC.

Sibley then appealed the Defendants' decision to terminate his benefits through a petition for review of retirement benefits termination. Sibley contends that the record shows that that (1) Sibley voluntarily and fully retired in July 2019, (2) Sibley continued to consult with Bank officers and employees and meet with Bank customers from July thru [sic] December 2019, (3) Peyton Self and other Bank officials were aware of Sibley's post-retirement Bank activities, and (4) Sibley properly drew retirement benefits starting in March 2018.

Defendant Self alleges that the Bank made "several problem loans" and that "[m]ost, if not all, of those loans were handled by Taylor Sibley, [the Plaintiff's] son whom [he] had trained and whom [he] was supposed to be supervising." Defendant Self alleged in his Affidavit that these "problem loans" constituted "gross neglect of [the Plaintiff's duties" and "led to the Bank being forced to enter into a Consent Order with regulators on July 9, 2019." He further alleges that a conversation occurred between the Plaintiff and Defendant Self in July 2019 in which the Plaintiff said that he, the Plaintiff, "felt like a failure." Defendant Self alleges that he fired the Plaintiff during this conversation. He further explained in the Affidavit that at the time of the alleged conversation firing Sibley, Defendant Self did not know that the SERP Agreement allowed the Bank to terminate the Plaintiff's retirement benefits if he was terminated for cause, and that as a result of this alleged lack of knowledge, "a desire to move [the Plaintiff's] retirement obligation back into the Bank's capital was not and could not have been motivation for [the Plaintiff's] termination." Defendant Self alleges that Defendant Citizens Bank decided to refer to this termination as a retirement so as not to cause the Plaintiff any embarrassment. In support of his contention, Defendant Self cited to the minutes of a January 23, 2020, board

6

meeting by Defendant Citizens Bank's Board of Directors at which the Board "acknowledge[d]" that the Plaintiff had been terminated for gross neglect of duties." The Plaintiff denied that this alleged conversation between himself and Defendant Self ever occurred, and flatly contends that Defendant Self's statement alleging that the Plaintiff was fired in July 2019 is false.

Defendant Citizens Bank's Board of Directors issued their Notice of Decision denying Plaintiff's appeal on July 24, 2020. As a result of this denial of review and consequent denial of the Plaintiff's retirement benefits, the Plaintiff filed his Complaint on October 23, 2020, in which he alleged that the Defendants are liable for breach of contract, tortious breach of contract, and intentional interference with contractual relations, along with violations of ERISA § 502(a), 503, and 510. Only the ERISA claims remain.

Defendant Self's Motion for Summary Judgment [97] seeks summary judgment concerning Plaintiff Sibley's ERISA § 510 claim. Defendant Citizens Bank's Motion for Summary Judgment [99] seeks summary judgment concerning Plaintiffs claims under ERISA § 502, 503, and 510. Plaintiff Sibley's Motion for Summary Judgment [101] seeks summary judgment on all ERISA claims.

**Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id*. "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co*., 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist*., 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc*., 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Discussion

The Court notes as an initial matter the existing question within the Fifth Circuit as to the most appropriate method to resolve ERISA claims. As in the case of *Katherine P*., the court

found that summary judgment or a bench trial may be proper methods to resolve ERISA claims, however, in that case a genuine issue of material fact precluded summary judgment and thus the court vacated the district court's grant of summary judgment and remanded for further proceedings. *Katherine P. v. Humana Health Plan, Incorporated*, 959 F.3d 206, 209-210 (5th Cir. 2020). The Fifth Circuit suggested that the district court "need not conduct a traditional trial but rather just review the administrative record and make findings of fact and conclusions of law." *Id*. Courts have also presented the option of a bench trial when the parties have not specifically moved for judgment on the briefs. *Id*. There is also the option of conducting a trial on the papers pursuant to Rule 52 where the Court issues findings of fact and conclusions of law. *Talasek v. Unum Life Ins. Co. of Am.*, No. 4:18-cv-3306, 2020 WL 7775450 (S.D. Tex. Dec. 15, 2020). However, in this matter, the parties have only discussed resolving the current motions under Rule 56, and thus the Court will evaluate the motions using only Rule 56. Following this standard, a genuine issue of material fact in the record concerning Plaintiff's claims would prevent the Court from granting any of the parties' motions for summary judgment.

**I.      ERISA § 503**

The Court first address Plaintiff's ERISA § 503 claim brought against Defendant Citizens Bank. Section 503 requires that every employee benefit plan shall:

> (1) Provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) Afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

ERISA § 503, 29 U.S.C. § 1133.

Sibley alleges that Citizens Bank failed and refused to provide specific reasons for the termination of benefits; failed to identify and disclose all documents and other information which Citizens Bank believed supported its decision to terminate benefits in spite of Sibley's request to do so; and made efforts to supplement and reform the record after Sibley filed his appeal of the termination of benefits.

Defendant Citizens Bank responds to Plaintiff's claim by demonstrating that all requirements under ERISA § 503 were either met or exceeded. Sibley was provided with notice of termination of benefits, a reason for the termination of benefits, procedures to appeal the decision, the right to access documents and information related to the claim review, and the right to bring a civil action under ERISA § 502 after exhausting administrative remedies.

With the goal being to explain the denial of benefits and ensure an adequate review of that denial, the evidence presented by Citizens Bank establishes that this was properly done. Plaintiff Sibley provides no argument or reference to any material in the record to dispute Citizens Bank's argument that the Section 503 claim should be dismissed. Given that there are no genuine disputes to any material fact regarding Plaintiff's ERISA § 503 claim, the Court finds that summary judgment is warranted in favor of Defendant Citizens Bank.

## II.     ERISA § 502

ERISA § 502(a)(1)(b) provides an ERISA "participant or beneficiary" a right of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In sum, the purpose of ERISA § 502(a)(1)(b) is to provide a plan participant a right of action to seek benefits that were "promised to him under the terms of the plan [but were] not provided." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004).

"Generally, in suits brought under § 502(a)(1)(B), district courts review the denial of benefits de novo. But if the benefits plan ... gives the administrator authority to determine eligibility for benefits or to construe the plan terms, the denial is reviewed for an abuse of discretion." *Manuel v. Turner Indus. Grp., LLC*, 905 F.3d 859, 868(5th Cir. 2018) (cleaned up).

Defendant Citizens Bank argues that the standard of review required in this circumstance is abuse of discretion since the SERP granted the bank discretionary authority to determine claims for benefits and decisions on review of claims for benefits and since the SERP granted Citizens Bank the authority to administer the agreement, including interpreting the provisions of the agreement.

Plaintiff Sibley instead argues that the de novo standard of review applies as the SERP was modified to remove Citizens Bank's discretion in deciding Sibley's employment status and termination date. Sibley cites to *Campbell* which found a de novo standard of review should apply in that instance due to a few factors. *Campbell v. Royal Bank Supp. Exec. Retirement Plan*, 2022 U.S. Dist. LEXIS 158798 (E.D. Pa, 2022). In *Campbell*, the SERP did not provide for the Board to have sole discretion to interpret provisions of the SERP, and specific sections of the SERP used the term "discretion" when describing the Board's authority. *Id*.

In the present case, the SERP provides a general clause that broadly gives Citizens Bank the authority to interpret the provisions of the agreement. The SERP provides in section 8.9 that "The Bank shall have powers which are necessary to administer this Agreement, including but not limited to: 8.9.1. Interpreting the provisions of the Agreement[.]" As in *Campbell*, which the Court notes that both parties have cited in their favor, "an express grant of discretion in one specific area of the plan undermined a claim that the administrator possessed implied discretion in another area of the plan." *Id*. Sibley points to no clauses or sections of the SERP that

11

specifically and expressly grant discretion to Citizens Bank for another area of the plan. Here the SERP provides one general grant of authority to Citizens Bank to interpret the provisions the agreement, which supports the abuse of discretion standard.

A plan administrator abuses its discretion when there is not "substantial evidence in the record to support its decision, including those to deny or to terminate benefits." *George v. Reliance Standard life Ins. Co.*, 776 F.3d 349, 354 (5th Cir. 2015). Substantial evidence under the abuse of discretion standard is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty life Ins. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). Even with substantial evidence, other factors might establish an abuse of discretion including a conflict of interest in a dual role as payor and administrator of an ERISA plan. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). "The significance of the conflict of interest factor will depend on the circumstances of the particular case." *Id*. at 107.

Sibley argues that the administrative record clearly shows that Citizens Bank's financial condition motivated Citizens Bank to terminate Sibley's SERP benefits both initially and when denying the appeal. Citizens Bank does not deny that it had a conflict of interest relevant to Sibley's claim for benefits but argue instead that this conflict is not determinative of an abuse of discretion.

As Citizens Bank acknowledges, a conflict of interest existed in this situation. The administrative record shows communication within Citizens Bank about how to use outstanding SERPs as a source of needed bank capital and that recapturing that liability might be a solution. While the supplemental evidence provided is used, at least partially, out of context, it further confirms the existence of a conflict of interest, to which the Court will apply some skepticism in

12

its review of Citizens Bank's decision. A sliding scale applies to this conflict of interest, and "[t]he greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be*." Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 270 (5th Cir.2005).

Typically, the Court applies a two-part test when reviewing a plan administrator's denial of benefits. *Gosselink v. Am. Tel. & Telegraph, Inc*., 272 F.3d 722, 726 (5th Cir.2001). According to this test, the Court must first determine whether the administrator's interpretation of the plan is legally correct and then move on to considering whether the decision to deny benefits was an abuse of discretion. The parties in this matter make no argument regarding whether the administrator's interpretation of the plan was legally correct, however, the second prong of the two-part test can operate independently of the first. *Cervantes v. 3NT, LLC*, 2022 WL 2339469 (W.D. Tex. June 29, 2022) (citing *Baptist Mem'l Hosp.—De Soto, Inc. v. Crain Auto., Inc*., 392 F. App'x 288, 296 (5th Cir. 2010)).

In determining whether a claim administrator abuses its discretion in denying or terminating benefits, the Court looks to the evidentiary support for the claim administrator's decision. A claim administrator abuses its discretion if its decision to deny or terminate benefits is arbitrary or is not supported by substantial evidence. *Encompass Off. Sols., Inc., v. La. Health Serv. & Indem. Co*., 919 F.3d 266, 274 (5th Cir. 2019).

Sibley claims that Citizens Bank abused its discretion by determining that Sibley was not entitled to the retirement benefits provided for in the SERP due to being falsely classified as terminated, even though he had been paid these benefits for approximately seventeen months, with his retirement having been acknowledged by the Defendants. Citizens Bank instead alleges

that Sibley's employment was terminated due to gross neglect of duties and that the initial payment of Sibley's retirement benefits was an oversight.

The Court first looks to the administrative record to review the evidence supporting Sibley's claim that he retired from Citizens Bank and was not terminated on July 3, 2019. The administrative record contains multiple items supporting Sibley's contention that he retired instead of being terminated. On April 1, 2019, Sibley gave notice of his intent to retire as a director of the holding company's board of directors and the board accepted Sibley's retirement. In July of 2019, the record shows that Sibley gave notice of his resignation as President and CEO of the holding company, and the board of directors' minutes acknowledge his retirement. Sibley points out that Peyton Self was on this board of directors as further evidence of retirement instead of termination. The administrative record contains board minutes from the July 16, 2019, board of directors meeting where Self announced that "Frank Sibley has retired effective yesterday 7/15/19" and that Sibley would work as a "consultant on troubled asset negotiations and workouts on an as needed basis." On July 24, 2019, Citizens Bank emailed all employees stating that "[t]his is to inform all of you that as of the end of July, 2019 Frank will be retiring from his usual duties at the Bank." The email further stated that "[Frank] will continue to work with us on special projects[,]" and "[Frank] is very much looking forward to his full retirement in the days to come." Further, on August 12, 2019, Citizens Bank prepared a report for the FDIC containing a summary of the events taken by management and the bank's board of directors. This report states that "Mr. Frank Sibley has retired, effective 7/15/19" and that "[t]his Consent Order Status Report shall serve as the written notice of this event as required by the Order." The administrative record further shows Sibley was involved with the bank in multiple capacities after July 15, 2019.

14

The Court now looks to the administrative record to review evidence supporting Citizens Bank's claim that Sibley did not retire but was instead terminated for cause. Citizens Bank points to Self's testimony in the record where Self states that he verbally communicated to Sibley that his services were no longer needed at the bank on July 3, 2019. The affidavit of Nelle Pritchard, who was the Executive Vice President for Audit and Human Resources of Citizens Bank, provides her recollection of the matter. Nelle Pritchard states that Self said something to the effect that "he's gone," referring to Sibley and that no further paychecks should be provided to Sibley. Nelle Pritchard also states her belief that even though Sibley was already receiving retirement benefits, Sibley had not met the standards of retirement as he was working for Citizens Bank too often. A third-party consultant, Thomas Jefferson Fair, Jr., states in his affidavit that he emailed Sibley the day after Self terminated him to inform Sibley that he was unaware that Self planned to terminate Sibley. Self further contends that any public communications regarding Sibley's termination of employment would refer to "retirement" as to not embarrass Sibley. Peyton Self, on January 30, 2020, on behalf of The Board of Directors of Citizens Bank, notified Sibley that his retirement benefits were being terminated and that the board found that substantial evidence supported the finding the Sibley was terminated on July 3, 2019.

Given that the administrative record can support both Sibley's and Citizens Bank's claim when reviewing through a summary judgment standard, while also considering the conflict of interest, the Court finds a genuine issue as to whether Citizens Bank abused its discretion in terminating Sibley's benefits. Genuine issues of fact exist in the record as to whether Sibley is entitled to his retirement benefits, and thus summary judgment is inappropriate as to either party's motion.

### III.     ERISA § 510

The Court next addresses Plaintiff's ERISA § 510 claim brought against both Citizens Bank and Peyton Self. The Court first address Plaintiff's ERISA § 510 claim brought against Defendant Citizens Bank. Section 510 provides that "it shall be unlawful for any person to discharge… or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan… or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140, ERISA § 510.

In order to establish a claim under Section 510 a plaintiff must show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." *Bodine v. Employers Casualty Company*, 352 F.3d 245 (5th Cir. 2003). "To establish a prima facie case under [Section] 510, a plaintiff must prove, inter alia, that his employer terminated him with the specific intent to discriminate against him for exercising, or to interfere with, any ERISA right to which he is entitled or may become entitled." *Parker v. Cooper Tire and Rubber Co.*, 2012 WL 2376658 (N.D. Miss. May 30, 2012), aff'd, 546 Fed.Appx. 522 (5th Cir. 2014).

Defendants Citizens Bank and Peyton self both argue that Plaintiff's claims under Section 510 fail as an initial matter since equitable relief is available under Section 502(a)(3). Defendants argue that while the Fifth Circuit has not addressed the issue, many circuits hold that claims under Section 510 must be enforced to the equitable relief provisions of Section 502(a)(3). Defendants cite to *Taylor* which states "…when a plaintiff has brought claims under both Sections 1132(a)(1)(b) and 1132(a)(3), the Fifth Circuit has instructed that dismissal of the Section 1132(a)(3) claim is proper because there is appropriate relief available under Section

16

1132(a)(1)(b)." *Taylor v. Prudential Ins. Co. of America*, 2013 WL 75742 (S.D. Miss. Jan. 4, 2013) (quoting *Smith v. Hartford Life and Acc. Ins. Co.*, 2011 WL 5864544 (S.D. Miss. Nov. 22, 2011)).

However, the Defendants are unable to cite to any Fifth Circuit case which outright prohibits a Section 510 claim being brought simultaneously to a Section 502 claim. Instead, the Court notes that multiple district courts within the Fifth Circuit have not prohibited Section 502 and 510 claims from being brought at the same time. Also, the Court finds that *Manuel* provides guidance as to this dispute between the parties. *Manuel v. Turner Industries Group, L.L.C.*, 905 F.3d 859 (5th Cir. 2018). The Fifth Circuit had an opportunity to state that having relief available under Section 502 preempted claims under Section 510, but that was not done. The Court in *Manuel* allowed the Section 510 claim to continue upon remand while acknowledging that claims also existed under Section 502(a)(1)(b). *Id*. The Court finds that the current Fifth Circuit case law does not prevent Sibley from asserting both a Section 502 claim and Section 510 claim in this matter.

Defendant Self also argues that the Section 510 claim against him personally should be dismissed as he is not a proper defendant. Specifically, Self argues that a section 510 claim cannot be brought or recognized against a non-employer. However, the Fifth Circuit is clear, and "ERISA § 510 claims may be maintained against non-employers." *Id*. at 871. *Sherrod* is also not dispositive of this question, as it leaves open the possibility of non-employers being subject to an ERISA interference claim under Section 510. *Sherrod v. United Way Worldwide*, 821 Fed.Appx. 311, 315 (5th Cir. 2020). As the Court concluded in its previous opinion concerning the motion to dismiss, Plaintiff's Section 510 claim against Defendant Self will not be dismissed on this basis.

To commit a prohibited or adverse action under ERISA Section 510, an employer must "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary." 29 U.S.C. § 1140. The record reflects that an adverse action took place when considering both the plaintiff's and defendants' version of events. In one scenario, Sibley was falsely and retroactively terminated so that he could no longer be eligible for benefits, and in the other scenario, Sibley was terminated for cause. Both situations reflect a termination for different reasons or motives, but both versions impacted Sibley's ability to collect benefits. The Court finds that the current law does not preclude a finding of a Section 510 adverse action under these facts. Based on both the Plaintiff's and Defendants' evidence in the record, a reasonable person could find that the actions of the parties constitute, or do not constitute, an adverse employment action.

Sibley must next establish the intent element of Section 510 which provides that the employee must provide evidence that the employer acted with the "specific intent" to retaliate or interfere with the employee's benefits. *Hinojosa v. Jostens Inc.*, 128 F. App'x 364, 368–69 (5th Cir. 2005). Specific intent can be proven by direct or circumstantial evidence. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). The employee "need not show that the sole reason for the [adverse action] was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer." *Id*. But if the only evidence of such specific intent "is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." C*lark v. Resistoflex Co., A Div. of Unidynamics Corp*., 854 F.2d 762, 771 (5th Cir. 1988).

18

Sibley first argues that the Defendants' intent is shown through efforts to increase Citizens Bank's capital. Sibley argues that Self talked in late 2019 with Scott Richardson, President of IZALE Financial Group, and William Cassidy, another bank consultant, on how to use Citizens Bank's deferred comp liability as a source of capital. An email from Cassidy to Self states that "[r]ecapturing that liability might be the answer[,]" and that Self should "expect Frank to sue… so seek clear guidance from counsel that you can stop the payments." Shortly after Self terminated Sibley and the board terminated Sibley's benefits, the board of directors sent a report to the FDIC demonstrating that bank capital was increased $1,049,633 by terminating Sibley's supplemental retirement plan.

Citizens Bank and Self argue that they were unaware of the clause in the SERP that allowed for termination of benefits if Sibley had been terminated for cause, thus explaining their delay in doing so. The Defendants further argue that the testimony of the board members show that the Citizens Bank's interest never came into their mind when the decision was made to terminate Sibley's benefits, including the testimony of Nolen Canon in which he does not recall anyone suggesting Sibley's benefits be terminated so that the bank could increase its capital position. Instead, the Defendants argue that Sibley was terminated due to gross neglect of duties, which led the bank into financial and regulatory difficulties. Self believed that Sibley was working against the best interests of the bank and that Sibley failed to accept responsibility for the bank's condition. These issues discussed by the Defendants involve problem loans that were made while Sibley was still the President and CEO of Citizens Bank or while Sibley maintained oversight after Self became CEO. The Defendants point to evidence which shows Sibley's termination was kept quiet, and that upon discovery of the ability to terminate Sibley's SERP benefits, the board decided to do so.

As stated above, Sibley contends that the Defendants' stated reasons for his termination of employment and benefits is a pretext for retaliation and interfering with Sibley's benefits. Plaintiff Sibley has provided evidence that he had been collecting his benefits for some time before his alleged verbal termination. Further, Sibley presented evidence showing the Defendants using Sibley's termination of benefits as a way to boost the bank's capital as reported to the FDIC the day after Sibley was notified of his SERP agreement being terminated along with all further benefits. Given all evidence in the record in favor of Sibley's allegations under Section 510 including, but not limited to, Citizens Bank's records stating Sibley had retired; Citizens Bank's acknowledgment that terminating Sibley's benefits increased needed capital; and Citizens Bank's reporting to the FDIC that Sibley had retired, Sibley has identified a genuine issue of material fact as to whether the Defendants acted with the requisite intent and whether the Defendants' stated reason for the termination was pretext.

## Conclusion

For the reasons stated above, the Court finds that Defendant Peyton MB Self's Motion for Summary Judgment [97] shall be DENIED; Defendant Citizens Bank and Trust Company's Motion for Summary Judgment [99] shall be GRANTED IN PART and DENIED IN PART; and Plaintiff Franklin Sibley's Motion for Summary Judgment [101] shall be DENIED.

An order in accordance with this opinion shall issue this day.

This, the 11th day of April, 2023.

SENIOR U.S. DISTRICT JUDGE